UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
CORNELL D.M. JUDGE CORNISH,    )
                               )
         Plaintiff,            )
                               )
         v.                    )      Civil Action No. 09-797 (RWR)
                               )
UNITED STATES OF AMERICA,      )
et al.,                        )
                               )
         Defendants.           )
_____)
```

## MEMORANDUM OPINION

Pro se plaintiff Cornell Cornish brings claims against the United States of America, the U.S. Patent and Trademark Office ("USPTO"), and then-USPTO employees Jon Doll, Harry I. Moatz, and James Toupin, each of whom is sued in his official and individual capacities, arising from the USPTO's decisions to deny Cornish's request for reinstatement to the patent attorney register. The defendants move to dismiss or, in the alternative, for summary judgment, arguing among other things that Cornish's claims fail for lack of proper service and personal jurisdiction, and for failure to state a claim. Because Cornish failed to effect proper service upon the individually-named defendants, his claim regarding USPTO rules is moot, sovereign immunity bars his common law claims and constitutional claims against the government and the employees in their official capacities, and res judicata bars his reinstatement claim, the defendants' motion will be granted.

-2-

BACKGROUND

Earlier memorandum opinions described the facts relevant here.  See Cornish v. Dudas, 813 F. Supp. 2d 147 (D.D.C. 2011) ("Cornish II"); Cornish v. Dudas, 715 F. Supp. 2d 56 (D.D.C. 2010) ("Cornish I").  Cornish passed the patent examination in 1958 and was registered to practice before the USPTO.  Cornish I, 715 F. Supp. 2d at 59.  However, a former client filed a grievance against him in 1995.  In 1996, Cornish informed the USPTO that he would "ceas[e] practice," id., and the USPTO construed the letter as a request for removal from the register. Cornish II, 813 F. Supp. 2d at 148.  After the USPTO invited Cornish to correct its interpretation and received no response, it removed Cornish from the register.  Id.

Cornish requested reinstatement in 2005.  Id.  However, the USPTO denied the request based on Cornish's failure to present sufficient evidence "of his ability to render patent applicants valuable service" or, in the alternative, to pass the patent examination.  Cornish I, 715 F. Supp. 2d at 59.  Cornish took and failed the patent examinations administered in July of 2005, 2006, and 2007, though the USPTO's Office of Enrollment Discipline ("OED") had granted all of his requests to make reasonable accommodations for him to take the exams.  Id.  He also sat for and failed the 2008 patent exam, during which he received "the reasonable medical accommodations for which he had

provided sufficient medical documentation establishing a need."[1]
(Defs.' Mem. of P. & A. in Supp. of its Mot. to Dismiss [Dkt.
#11] ("Def.'s First Mem.") at 8.)

In 2007, Cornish brought an action against three USPTO
employees in their official capacities, challenging the
defendants' decision to deny his reinstatement request in 2005
and alleging various constitutional and statutory violations.
See Cornish I, 715 F. Supp. 2d at 60.  He later amended his
complaint to add Bivens[2] claims and challenge the USPTO's "Final
Rules . . . that governed patent applicants' process for
protecting inventions."  Id.  Summary judgment was granted in
favor of the defendants as to Cornish's reinstatement claims
"[b]ecause Cornish . . . failed to show that the decision to deny
his reinstatement request was arbitrary or capricious and failed
to demonstrate that the defendants violated the Rehabilitation
Act," id. at 58, which requires that disabled individuals receive

---

[1]  Cornish was provided 14-point font on the examination and
answer sheets, magnifiers for reading the Manual of Patent
Examining Procedure, additional lighting, a separate testing
room, and additional time to take the exam spread out over two
days instead of the standard one day.  (Defs.' First Mem. at 8-
9.)  Among other requested accommodations, Cornish was not
provided a human reader, a closed circuit television, or access
to his corrected 2005, 2006, and 2007 examinations, nor was he
permitted to retake the three past patent bar examinations an
unlimited number of times.  (Id. at 8.)

[2]  Bivens v. Six Unknown Named Agents of Fed. Bureau of
Narcotics, 403 U.S. 388 (1971), recognized a cause of action
against individual federal employees for constitutional
violations committed while carrying out their official duties.

-4-

"'reasonable accommodations' that permit them to have access to and take a meaningful part in public services and public accommodations." Id. at 65.  His remaining claims were dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Id. at 58.

In 2008, before he received his 2008 exam results, Cornish filed a petition and addendum with the OED Director.  (Def.'s First Mem. at 9; see also Exs. 18, 19.)  The petition and addendum requested that the OED reconsider the reasonable accommodations provided to him during the July 2008 patent examination, and requested reinstatement to the patent register by either waiver of the requirement that he pass the examination or permission to retake the identical examination an unlimited number of times.  (Id. at 9.)  Cornish also "generally re-asserted the same causes of actions presented in Cornish I" in his petition.[3]  (Id.)  The OED director denied Cornish's petition on November 6, 2008.  (Id. at 10.)  The Acting USPTO Director's designate affirmed the decision on March 31, 2009 and later denied Cornish's request for reconsideration.  (Id. at 11.)

In this action seeking declaratory and injunctive relief and damages, Cornish challenges as an unconstitutional taking the

---

[3]  While his petition to the OED Director was pending, Cornish filed an additional petition with the acting USPTO Director, repeating the same challenges to the OED decisions.  (Defs.' First Mem. at 9-10.)

USPTO's denial of his request for reinstatement.  (See, e.g., Am. Compl. at 63, 80, 93, 96-97, 101, 106.)  He also challenges the USPTO's application of the "Final Rules" to him as unconstitutional under the *Ex Post Facto* and Bill of Attainder Clauses (Am. Compl. at 63-65, 75), asserts a <u>Bivens</u> claim against USPTO employees in their individual and official capacities based upon purported First Amendment and due process violations (<u>id.</u> at 63, 67), and seeks to re-take the patent exam an unlimited number of times (<u>id.</u> at 71).  Finally, Cornish brings common law claims for tortious "interference with attorney-client relationships[,]" fraud, and deceit.  (See, e.g., <u>id.</u> at 73, 90; <u>see also</u> Defs.' Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss Am. Compl. or, in the Alternative, for Summ. J. [Dkt. #23] ("Defs.' Second Mem.") at 10.)  The defendants now move to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1)-(6) or, in the alternative, for summary judgment.

DISCUSSION

I.   <u>BIVENS</u> CLAIMS

Cornish's amended complaint seeks unspecified <u>Bivens</u> damages against the defendants in their individual and official capacities.  (Am. Compl. at 83-84, 90.)  The defendants move to dismiss the individual capacity claims for, among other things, failure to effect proper service, improper venue, and lack of

-6-

personal jurisdiction.[2]  (Defs.' First Mem. at 12-16.)  <u>See also</u>

Fed. R. Civ. P. 12(b)(2), (3), (5).  They also argue that

Cornish's official capacity claims, construed as claims "against

the government itself" (Defs.' First Mem. at 12 n.5), should be

dismissed for failure to "identify a waiver of sovereign immunity

for his monetary claims."  (<u>Id.</u> at 29.)

    A.   <u>Individual capacity claims</u>

    Cornish personally attempted to serve process upon defendant

John Doll, the then-Director of the USPTO, and Harry Moatz, the

then-Director of the USPTO's OED, by certified mailings to their

offices of employment.  (<u>See</u> Defs.' First Mem. at 14; <u>see also</u>

Return of Serv. Aff. [Dkt. #3].)  Doll's return receipt bears the

signature "Lennox Cooper," and Moatz's is unsigned.  Cornish

filed no proof of service upon defendant James Toupin, the then-

General Counsel.

    The defendants have moved to dismiss the amended complaint

for insufficiency of service of process.  <u>See</u> Fed. R. Civ. P.

12(b)(5).  "'Upon such a motion, the plaintiff [must] establish[]

that []he has properly effected service' as is required under

Rule 4."  <u>Strong-Fischer v. Peters</u>, 554 F. Supp. 2d 19, 23

---

[2]  Cornish's failure to establish personal jurisdiction over the individually-named defendants obviates any need to discuss additional grounds for dismissal of the individual capacity claims, such as special factors counseling against creation of a <u>Bivens</u> remedy (Defs.' First Mem. at 17-20) and failure to state a claim for which relief can be granted (<u>id.</u> at 20-26).

(D.D.C. 2008) (citation omitted).  "[S]ervice[] . . . cannot be effected by a party" since "Rule 4(c)(2) provides that '[a]ny person who is at least 18 years old and not a party may serve a summons and complaint.'"  Judd v. F.C.C., 276 F.R.D. 1, 6 (D.D.C. 2011) (citing Fed. R. Civ. P. 4(c)(2)) (emphasis added).  Neither may an individual defendant be served "at his place of business."  Young v. Fed. Bureau of Prisons, 825 F. Supp. 2d 234, 239 (D.D.C. 2011).  Instead, "Rule 4(e)(2) requires that service upon defendants sued in their individual capacities be effected either personally, by leaving the complaint and summons at the dwelling or usual place of abode, or by delivery to an agent lawfully authorized to receive service."  Williams v. Court Services and Offender Supervision Agency for D.C., 840 F. Supp. 2d 192, 199 n.3 (D.D.C. 2012) (citing Fed. R. Civ. P. 4(e)(2)).

Here, Cornish's service of process was insufficient.  He personally tried to serve two of the three individually-named defendants, and did so by mailing process to them at their place of employment.  Moatz's unsigned return receipt does not show that Moatz received process, and Cornish provides no evidence that anyone named Lennox Cooper was authorized to accept service of process as Doll's agent.  Cornish supplies no proof at all of personal service upon Toupin.  Although "pro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings," Nellis v.

Gonzales, Civil Action No. 06-1704 (CKK), 2007 WL 1033517, at *2
(D.D.C. Mar. 30, 2007); see also Freeman v. Fallin, 210 F.R.D.
255, 256 (D.D.C. 2002) (granting unrepresented plaintiffs "a
brief extension of time to perfect service"), no such latitude is
warranted here.  The defendants alerted Cornish to a defect in
service as early as 2009, but he has shown no subsequent effort
to correct it.

Cornish's failure to properly effect personal service of
process upon the defendants also deprives the court of personal
jurisdiction over the defendants in their individual capacities.
Johnson v. Williams, Civil Action No. 05-2315 (RBW), 2006 WL
2788985, at *3 (D.D.C. Sept. 26, 2006); see also Simpkins v.
D.C., 108 F.3d 366, 369 (D.C. Cir. 1997).  "In a Bivens action,
the defendants must be personally served as individuals in order
for a court to have jurisdiction over them. . . .  The failure to
effect individual service is fatal to a Bivens claim." Paolone
v. Mueller, Civil Action No. 05-2300 (JDB), 2006 WL 2346448, at
*3 (D.D.C. Aug. 11, 2006).  Cornish bears "the burden of
establishing the court's personal jurisdiction over" the
defendants.  Day v. Corner Bank (Overseas) Ltd., 789 F. Supp. 2d
150, 155 (D.D.C. 2011).  Because "it is undisputed that [the]
defendants . . . have not been properly served under Rule 4(e),"

<u>Paolone</u>, 2006 WL 2346448, at *3, the individual capacity claims will be dismissed.[3]

B.   <u>Official capacity claims</u>

"It is well established that <u>Bivens</u> remedies do not exist against officials sued in their official capacities." <u>Kim v. United States</u>, 632 F.3d 713, 715 (D.C. Cir. 2011).  Claims brought against federal officials in their official capacities "are treated as if they were brought against the federal government itself." <u>Morton v. Bolyard</u>, 810 F. Supp. 2d 112, 115 (D.D.C. 2011) (citing <u>Kentucky v. Graham</u>, 473 U.S. 159, 165–66 (1985)).  However, "'it is axiomatic that the United States may not be sued without its consent[,] that the existence of consent is a prerequisite for jurisdiction,'" <u>Morton</u>, 810 F. Supp. 2d at 115 (quoting <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983)), and that, "'[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'" <u>Id.</u> at 116 (quoting <u>FDIC v. Meyer</u>, 510 U.S. 471, 475 (1994)).  Since the federal government "has not expressly waived its sovereign immunity for suits brought under <u>Bivens</u>[,]" sovereign immunity

---

[3]  Cornish "has not contested, and therefore has conceded, defendants' argument that this venue is improper for litigating [his] <u>Bivens</u> claim[s,]" which should be "brought in the judicial district where a substantial part of the events or omissions giving rise to the claim occurred[.]" <u>Mullen v. Bureau of Prisons</u>, 843 F. Supp. 2d 112, 116-17 (D.D.C. 2012).  The <u>Bivens</u> claims therefore are subject to dismissal for improper venue as well.  <u>See id.</u> (granting motion to dismiss <u>Bivens</u> claim).

-10-

bars Cornish's claims against the individually-named defendants
in their official capacities.  _Young_, 825 F. Supp. 2d at 239
(citing _Meyer_, 510 U.S. at 484, and _Perkins v. Ashcroft_, 275 F.
App'x 17 (D.C. Cir. 2008)).  Thus, the court lacks subject matter
jurisdiction to hear Cornish's official capacity claims.

## II.  _TAFAS_ CLAIMS

As he did in _Cornish I_, Cornish challenges as
unconstitutional the USPTO's August 2007 "Final Rules" and seeks
a declaratory judgment to that effect.  (Am. Compl. at 75.)  In
_Tafas v. Dudas_, 541 F. Supp. 2d 805 (E.D. Va. 2008), "the
plaintiffs challenged the [validity of the] Final Rules."
_Cornish I_, 715 F. Supp. 2d at 66.  "During the course of the
_Tafas_ litigation, however, the USPTO rescinded the Final Rules
and the litigation was dismissed as moot."  _Id._ (citing _Tafas v._
_Kappos_, 586 F.3d 1369, 1371 (Fed. Cir. 2009).  Here, Cornish's
amended complaint refers repeatedly to the _Tafas_ litigation and
the "Final Rules published in 72 Fed. Reg. 46,716 (Aug. 21,
2007)."  (_See, e.g._, Am. Compl. at 63-64, 113-15; _see also id._ at
169-76, 182, 184.)  However, the defendants assert that these
"repeated references . . . make no sense," because "[n]either the
Final Rules nor the _Tafas_ litigation have anything to do with a
practitioner seeking reinstatement to the PTO roster of
registered practitioners."  (Defs.' Second Mem. at 8.)  Assuming
that the Final Rules are linked to Cornish's attempted

-11-

reinstatement, the defendants argue that his claims should be dismissed as moot.  (<u>Id.</u> at 9.)

"It is a basic constitutional requirement that a dispute before a federal court be 'an actual controversy . . . extant at all stages of review, [and] not merely at the time the complaint is filed.'"  <u>Newdow v. Roberts</u>, 603 F.3d 1002, 1008 (D.C. Cir. 2010) (quoting <u>Steffel v. Thompson</u>, 415 U.S. 452, 459 n.10 (1974)) (alteration in original).  "'Even where litigation poses a live controversy when filed,' a federal court must 'refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'"  <u>Initiative & Referendum Inst. v. U.S. Postal Svce.</u>, No. 10-5337, 2012 WL 2866306, at *7 (D.C. Cir. July 13, 2012) (quoting <u>Am. Bar Ass'n v. FTC</u>, 636 F.3d 641, 645 (D.C. Cir. 2011)).  Under the mootness doctrine, a case is deemed moot if "'the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'"  <u>Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n</u>, 628 F.3d 568, 576 (D.C. Cir. 2010) (quoting <u>Cnty. of L.A. v. Davis</u>, 440 U.S. 625, 631 (1979)).  Thus, "where 'events outrun the controversy such that the court can grant no meaningful relief,'" <u>Whitney v. Obama</u>, 845 F. Supp. 2d 136, 138 (D.D.C. 2012) (quoting <u>Del Monte Fresh Produce Co. v. United States</u>, 570 F.3d 316, 326 (D.C. Cir. 2009) (Sentelle, J.,

-12-

dissenting) (internal quotation marks and citation omitted)), a
case must be dismissed as moot.

Cornish has made no showing of a live controversy involving
the Final Rules since the USPTO has rescinded them. (See Defs.'
Second Mem. [Dkt. #23] at 8, 10.) Even assuming that the OED's
denial of Cornish's request for reinstatement in any way
materially depended upon the Final Rules, Cornish cannot show
that he will be subject to future adverse actions driven by rules
which have been rescinded. Declaratory relief from rescinded
rules would be unavailable. Cornish's <u>Tafas</u> claims therefore
will be dismissed as moot.

III. COMMON LAW AND CONSTITUTIONAL CLAIMS

Cornish appears to assert common law claims against the
defendants for interference with contract rights, deceit, and
fraud, based upon the March 31, 2009 Order and other actions of
the USPTO and its employees involving his failed efforts to be
reinstated on the patent attorney register. (See Am. Compl.
¶¶ 26-27, 108, 126, 139.) Under 28 U.S.C. § 2679(d), the
defendants filed a certification "substituting the United States
as the sole defendant in place of the individual defendants for
any such common law claims." (Defs.' Second Mem. [Dkt. #23] at
10-11, Attached Certification.) Cornish's amended complaint also
reiterates many of the same constitutional claims alleged in
<u>Cornish I</u>, since he challenges the March 31, 2009 Order and

actions of the USPTO as unconstitutional limitations on his First
Amendment right to freedom of speech.  (See, e.g., Am. Compl. at
69.)

As is discussed above, "[t]he United States maintains
sovereign immunity except to the extent that it consents to be
sued, and the terms of its consent define a court's jurisdiction
to hear the suit." Hornbeck Offshore Transp., LLC v. United
States, 563 F. Supp. 2d 205, 209 (D.D.C. 2008).  "[S]uits for
damages against the United States under . . . the Constitution
are barred by sovereign immunity and . . . suits for damages
against the United States under the common law must be brought
pursuant to the limited waiver of sovereign immunity in the
[Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b).]" Benoit
v. United States Dep't of Agriculture, 608 F.3d 17, 20 (D.C. Cir.
2010).  FTCA claims are subject to dismissal, however, where the
plaintiff does not "assert that he has exhausted necessary
administrative remedies under the FTCA, which is a mandatory
prerequisite . . . . ," and where a plaintiff seeks "a remedy for
Constitutional violations." McAlister v. Potter, 843 F. Supp. 2d
117, 123 (D.D.C. 2012) (quotation marks and citation omitted).

If, as the defendants suggest, Cornish's amended complaint
"add[s] a First Amendment claim that the PTO, by excluding him
from the patent bar, would make unlawful his advertising himself
as a member of the patent bar (Defs.' Second Mem. [Dkt. #23] at 4

-14-

n.5), then sovereign immunity bars that claim.  <u>See</u> <u>Benoit</u>, 608
F.3d at 20-21.  Any damages claims asserted against the USPTO and
the United States for alleged violations of the Fourth, Fifth,
and Fourteenth Amendments (<u>see, e.g.</u>, Am. Compl. at 129-131)
likewise are barred by sovereign immunity.  <u>See</u> <u>Benoit</u>, 608 F.3d
at 20-21.  In addition, the FTCA does not waive sovereign
immunity for claims of interference with contract rights.  28
U.S.C. § 2680(h).  The D.C. Circuit has held that "'[c]laims for
interference with prospective business advantage . . . may be
barred as claims arising out of interference with contract
rights[.]'"  <u>Peter B. v. U.S.</u>, 579 F. Supp. 2d 78, 83 (D.D.C.
2008) (quoting <u>Art Metal-U.S.A., Inc. v. United States</u>, 753 F.2d
1151, 1155 (D.C. Cir. 1985)).  Finally, since Cornish has not
pled or asserted exhaustion of remedies as to his fraud or deceit
claims, neither of those claims falls under the limited waiver
contemplated by the FTCA.  Cornish's common law and
constitutional claims against the government therefore will be
dismissed for lack of subject matter jurisdiction.

IV.  REINSTATEMENT CLAIM

     Throughout the Amended Complaint, Cornish asserts many of
the same claims he litigated in <u>Cornish I</u>.  Cornish also
incorporates by reference all of the causes of action and

allegations set forth in that previous case.  (See, e.g., Am.
Compl. ¶¶ 106-07.)[4]

"[T]he doctrine of *res judicata* holds that a judgment on the
merits in a prior suit bars a second suit involving identical
parties or their privies based on the same cause of action."
Apotex, Inc. v. U.S. FDA, 393 F.3d 210, 217 (D.C. Cir. 2004)
(citing Drake v. FAA, 291 F.3d 59, 66 (D.C. Cir. 2002)).  This
doctrine "plays a central role in advancing the 'purpose for
which civil courts have been established, the conclusive
resolution of disputes within their jurisdictions.'"  Apotex, 393
F.3d at 217 (quoting Montana v. United States, 440 U.S. 147, 153
(1979)).  *Res judicata* "protects [parties'] adversaries from the
expense and vexation attending multiple lawsuits, conserves
judicial resources, and fosters reliance on judicial action by
minimizing the possibility of inconsistent decisions."  Montana,
440 U.S. at 153-54.  The doctrine need not be argued by the
parties, as a court "may raise the *res judicata* preclusion
defense sua sponte*,"* Rosendahl v. Nixon, 360 F. App'x 167, 168
(D.C. Cir. 2010) (citing Arizona v. California, 530 U.S. 392,

---

[4]  The defendants argued that these claims should be dismissed
under Rule 12(b)(6) for failure to state a claim upon which
relief can be granted, as Cornish "is not entitled to seek
duplicative recovery for the same alleged injuries."  (Defs.'
First Mem. [Dkt. #11] at 29.)  However, both the defendants'
motion to dismiss the complaint and motion to dismiss the amended
complaint were filed before the decision in Cornish I was issued.
Therefore, the defendants could not argue at the time of filing
for dismissal based on *res judicata*.

-16-

412-13 (2000)); see also Brown v. D.C., 514 F.3d 1279, 1285-86
(D.C. Cir. 2008)). "A 'district court may apply res judicata
upon taking judicial notice of [a] [party's] previous case.'"
Hiligh v. Quintana, Civil Action No. 12-497 (RWR), 2012 WL
1635242, at *1 (D.D.C. May 8, 2012) (quoting Tinsley v. Equifax
Credit Info. Svces., Inc., No. 99-7031, 1999 WL 506720 (D.C. Cir.
June 2, 1999) (per curiam)) (alteration in original).  In
considering the scope of a "cause of action," the D.C. Circuit
"has adopted the Second Restatement's 'transactional'
approach[.]"  Stanton v. D.C. Court of Appeals, 127 F.3d 72, 78
(D.C. Cir. 1997); see also Restatement (Second) of Judgments
§ 24(1) (1982).  "A 'cause of action, for purposes of [res
judicata], comprises all rights of the plaintiff to remedies
against the defendant with respect to all or any part of the
transaction, or series of connected transactions, out of which
the action arose.'"  Mwabira-Simera v. Sodexho Marriott Mgmt.
Svces., 786 F. Supp. 2d 395, 397 (D.D.C. 2011) (quoting Stanton,
127 F.3d at 78 (internal quotation marks and citation omitted)).
In determining "[w]hat factual groupings constitute[] a
transaction, and what groupings constitute a series[,]" courts
consider "whether the facts [a]re related in time, space, origin,
or motivation, whether they formed a convenient trial unit, and
whether their treatment as a unit conforms to the parties'

expectation, business understanding or usage." Restatement
(Second) of Judgments § 24(2).

An argument to dismiss a claim on grounds of res judicata is
analyzed under Federal Rule of Civil Procedure 12(b)(6) regarding
failure to state a claim upon which relief can be granted. <u>Po
Kee Wong v. U.S. Solicitor Gen.</u>, 839 F. Supp. 2d 130, 136 (D.D.C.
2012). In considering a Rule 12(b)(6) argument, a court accepts
as true a complaint's factual allegations, <u>Sierra Club v.
Jackson</u>, 648 F.3d 848, 855 (D.C. Cir. 2011), "giving [the
plaintiff] the benefit of every reasonable inference drawn from
the well-pleaded facts[,]" <u>Long v. Safeway, Inc.</u>, Civil Action
No. 11-0768 (BJR), 2012 WL 344756, at *2 (D.D.C. Feb. 3, 2012).
However, "[i]f a plaintiff fails to allege sufficient facts to
support his claim and nudge it across the line from conceivable
to plausible, the complaint will be dismissed." <u>Cornish I</u>, 715
F. Supp. 2d at 61 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S.
544, 556 (2007)).

Here, the OED's March 31, 2009 opinion and its initial
denial of Cornish's request for reinstatement form part of the
same series of events within the meaning of <u>Stanton</u>. <u>See
Stanton</u>, 127 F.3d at 78. The decisions issued from the same
agency against the same petitioner, and rejected the same request
for reinstatement. Because Cornish's reinstatement claim against
the USPTO already has been dismissed on the merits, <u>see Cornish</u>

-18-

<u>I</u>, 715 F. Supp. 2d at 62-64, and because the facts underlying that claim are part of the same series of events as those underlying the instant reinstatement claim, the instant reinstatement claim is barred under *res judicata* and will be dismissed.

## CONCLUSION

The court lacks personal jurisdiction over the individual defendants because none was properly served.  Cornish's <u>Tafas</u> claim is moot.  His official capacity <u>Bivens</u> claims and common law and constitutional claims against the government are barred by sovereign immunity.  *Res judicata* bars his claim for reinstatement.  Accordingly, the defendants' motion to dismiss will be granted.  A final order accompanies this memorandum opinion.

SIGNED this 15th day of August, 2012.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge